FILED BY _____ D.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

05 JUN 20 PM 4:42

ROBERT R. DI TROLIO
CLERK, U.S. DIST. CT.
W.D. OF TN, MEMPHIS

| | |
|---|---|
| DEMUS RICH and wife, MELBA RICH, individually and as Executors of the Estate of GARY BRIAN RICH, deceased,<br><br>    Plaintiffs,<br><br>vs.<br><br>CITY OF SAVANNAH, TENNESSEE, et al.,<br><br>    Defendants. | No. <u>1:02-1222 T/P</u> |

**ORDER DENYING PLAINTIFFS' MOTION TO EXCLUDE THE TESTIMONY OF DANNY FRANKS, DAVID CAGLE, JOHN OVERTON, AND JOSEPH PETERS, M.D., AND ALLOWING PLAINTIFFS TO DEPOSE WITNESSES OUTSIDE THE PERIOD OF DISCOVERY**

Before the court is plaintiffs Demus and Melba Rich's Motion to Exclude the Testimony of Danny Franks, David Cagle, John Overton, and Joseph Peters, M.D., filed on April 29, 2005 (dkt #120). Defendants filed their response on May 25. The matter was referred to the Magistrate Judge for disposition. On June 8, 2005, the court held a hearing on the motion. Counsel for all parties were present and heard. For the reasons below, the motion to exclude is DENIED. However, the court will permit the plaintiffs to take the depositions of witnesses Franks and Cagle outside the period of discovery. Furthermore, the plaintiffs shall be awarded

attorney's fees and expenses associated with the filing of this motion and counsel's participation at the June 8 hearing.

## I. BACKGROUND

Plaintiffs Demus Rich and Melba Rich ("Plaintiffs"), as executors of the estate of their son Gary Brian Rich ("Rich"), filed this action pursuant to 42 U.S.C. § 1983, alleging that the City of Savannah, Tennessee, the Chief of Police of the Savannah Police Department ("SPD"), and seven SPD officers violated Rich's federal and state constitutional rights. Plaintiffs also assert a state law negligence claim.

This lawsuit arises from an altercation between Rich and SPD officers on August 24, 2001. On that date, SPD received an emergency phone call, in which the caller stated that a woman had been stabbed. Officers responding to the call found Amy Rich ("Amy") at her neighbor's home, where she was being treated by emergency medical service personnel for stab wounds. Amy informed the officers that she had been stabbed by her husband, Gary Rich. She indicated to the officers that she believed her husband was at their home.

SPD Officers Terry W. Hosea, T.J. Barker, Victor W. Cherry, and John Sylvester went to the Rich home, and found Rich sitting on his couch. Rich was holding a knife and did not respond to commands from the officers. The four officers then sprayed Rich with mace. The officers moved back outside the home and secured

the perimeter. Along with Officers Tim Kelley, Larry Phelps, Allen Snelling, and a police canine, the four officers re-entered Rich's home and confronted him. Once again, Rich did not comply with the officers' demands, at which time they proceeded to restrain him. Plaintiffs allege that the officers first disabled Rich by spraying him with a fire hose, and then proceeded to beat, hit, kick, and force Rich into submission. Rich later died, and Plaintiffs claim that his death was a result of the officers' excessive force.

Plaintiffs' motion presently before the court seeks to exclude four defense witnesses from testifying at trial: Danny Franks, David Cagle, Joseph Peters, M.D., and John Overton. Franks and Cagle were identified as both expert and lay witnesses by the defendants in their supplemental Rule 26 disclosures on October 22, 2004, which was one week after the deadline set for completing depositions for all fact witnesses. The supplemental Rule 26 disclosure noted that Franks's and Cagle's expert reports would be provided at a later date. Defendants identified Dr. Peters and Overton as expert witnesses expected to testify at trial in another supplemental Rule 26 Disclosure on January 22, 2005. Plaintiffs argue that all four individuals should be excluded from testifying at trial, either because they are expert witnesses and to date have not disclosed any expert reports as required under Rule 26(a)(2)(B), or because they are non-expert witnesses who defendants should have disclosed to the plaintiffs well before the

3

close of discovery, as required under Rule 26(a)(1)(A). Defendants disagree, arguing that the witnesses are not experts and, furthermore, that the defendants had good cause for not timely disclosing the witnesses.

## II. ANALYSIS

### A. Whether Witnesses Will Provide Expert Testimony

In order to determine whether these four witnesses should be excluded from testifying at trial because the defendants failed to disclose their expert reports, the court must first decide whether they are, in fact, expert witnesses. A person is designated as an expert or lay witness based on the substance of his or her testimony. See Lamere v. New York State Office for the Aging, No. 03-0356, 2004 WL 1592669, at *1 (N.D.N.Y. July 14, 2004)(unpublished); Hawkins v. Graceland, 210 F.R.D. 210, 211 (W.D. Tenn. 2002); see also Fed. R. Evid. 701 advisory committee notes ("The amendment does not distinguish between expert and lay *witnesses*, but rather between expert and lay *testimony*.")

Federal Rules of Evidence 701 and 702 govern the admissibility of lay and expert opinion testimony. Lay testimony is "rationally based on the perception of the witness." Fed. R. Evid. 701. Expert testimony, however, is based on scientific, technical, or other specialized knowledge. See Fed. R. Evid. 702. For example, a nurse could testify as a lay witness that a skin injury appeared to be the result of a cigarette burn, but a court would have to

4

qualify a paramedic as an expert before the paramedic could testify that certain bruises are indicative of skull trauma. See State v. Brown, 836 S.W.2d 530, 549 (Tenn. 1992).[1]

Based on the record presently before this court, the court finds that none of the anticipated testimony by these four witnesses constitutes expert testimony. Franks is a professional photographer who took various photographs of the inside and outside of the Rich house on June 9, 2004. According to the defendants, Franks will testify about when and how the photographs were taken and lay a foundation for the admission of those photographs as evidence at trial. He will also testify about his personal observations about what he could see inside the Rich house while standing at various locations both outside and inside the home. His anticipated testimony will be limited to his own personal observations while taking the photographs. The mere fact that Franks is a professional photographer does not make his testimony expert in nature. Anyone with a camera has the ability to take photographs of the Rich home. Therefore, his anticipated testimony does not amount to expert testimony.

Cagle, an engineer, drew a floor plan of the Rich home, which the defendants intend to offer as evidence at trial. In order to draw the floor plan, Cagle measured the dimensions of rooms,

---

[1] The holding of this case was incorporated into the 2000 amendments to Rule 701. See Fed. R. Evid. 701 advisory committee notes.

5

doorways, and windows in the home. Although Cagle inputted his measurements into a computer program that was used to draw the floor plan, the floor plan could have been drawn by anyone with a measuring tape and straight-edge tool. The addition of "sight lines" does not add to the complexity of the plan or require specialized skill, as they are merely straight lines drawn from specific points within the home to areas outside the home. Cagle's anticipated testimony, according to the defendants, will be limited to laying a foundation for the floor plan and, like Franks, Cagle will testify about his personal observations while standing at various locations outside and inside the house. Because this testimony does not involve any scientific, technical, or specialized knowledge, it also is not expert testimony.[2]

Dr. Peters was Rich's treating physician for a period of time prior to the August 24 incident. According to the defendants, he will only testify about his treatment of Rich, the results of that treatment, and Rich's medical condition while under Dr. Peters's medical are. It is well established that a treating physician may testify about "opinions formed during the course of treatment" without being classified as an expert witness, but "with regard to opinions based on information not learned during the course of

---

[2]The court notes that the issue of whether Franks's or Cagle's testimony (and their accompanying photographs and floor plan diagram) is *admissible* as evidence at trial is not before the court and, therefore, is not addressed in this order.

treatment, a physician must comply with the rules regarding expert disclosure." Lewis v. Triborough Bridge and Tunnel Auth., No. 97-0607, 2001 WL 21256, at *1 (S.D.N.Y. Jan. 9, 2001)(unpublished); see also Mohney v. U.S. Hockey, Inc., 300 F.Supp.2d 556, 560-62 (N.D. Ohio 2004); Hawkins v. Graceland, 210 F.R.D. 210, 211 (W.D. Tenn. 2002); Peck v. Hudson City School Dist., 100 F.Supp.2d 118, 121 (N.D.N.Y. 2000). Defendants assert that Dr. Peters's testimony will be limited to his medical treatment of Rich while Rich was his patient during a period of time prior to the August 24 incident. Therefore, he will not provide any expert testimony.[3]

Overton is an assistant district attorney in Hardin County, where the City of Savannah is located. Plaintiffs have indicated that they will call a damages expert witness at trial who will testify about the probable earning capacity of Rich if he had not died. Defendants, however, note that the expert's report fails to reduce Rich's potential future earnings by the years that Rich would have been incarcerated had he been convicted of stabbing Amy Rich. According to the defendants, Overton will testify, based on his experience as an assistant D.A., about the potential criminal charges that may have been brought against Rich, and if convicted, the potential sentences under Tennessee law that Rich could have

---

[3] At the June 8 hearing, the plaintiffs conceded that if Dr. Peters will only testify about his medical treatment of Rich prior to the August 24 incident, then he would not have to be qualified as an expert at trial.

received had he been convicted of stabbing Amy Rich. His testimony, defendants contend, will not include his opinion about the probability of conviction, but rather will involve the possible charges and sentences available, if convicted. The court finds that such testimony does not qualify as expert testimony.

Even assuming, *arguendo*, that Overton will give expert testimony at trial, his disclosure as an expert is governed by Fed.R.Civ.P. 26(a)(2)(A), not 26(a)(2)(B) as plaintiffs argue. Defendants have subpoenaed Overton to testify at trial. Defendants have not retained Overton as an expert, nor is he an employee who regularly gives expert testimony. Therefore, he does not fall within the scope of Rule 26(a)(2)(B), and thus need not produce an expert report in order to testify at trial. See Indem. Ins. Co. of N. Am. v. Am. Eurocopter, LLC, __ F.D.R. ___, 2005 WL 1027089, at *2 (M.D.N.C. March 10, 2005)(unpublished); Rollins v. Barlow, 188 F.Supp.2d 660, 661-62 (S.D.W.V. 2002); Peck v. Hudson City School Dist., 100 F.Supp.2d 118, 121 (N.D.N.Y. 2000).

## B.   Timeliness of the Disclosures

Both Franks and Cagle were disclosed on October 22, 2004, one week after the October 15 deadline for deposing fact witnesses set in the amended Rule 16 scheduling order. Dr. Peters and Overton were not disclosed as "experts" until January 22, 2005, more than

8

one month after the December 15 deadline for disclosing experts.[4]

Rule 16(f) states,

> If a party or party's attorney fails to obey a scheduling or pretrial order, . . . the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D). In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust.

In the present case, Franks and Cagle were disclosed one week after the deadline for deposing fact witnesses, and the court finds that the defendants' explanations for the untimely disclosure do not excuse their noncompliance with the amended scheduling order. Defendants contacted Franks several months before disclosing him to the plaintiffs, as evidenced by the fact that he took photographs of the Rich home on June 9, 2004. Similarly, Cagle prepared a floor plan of the Rich home which was dated June 10, 2004. Defendants knew about both of these witnesses several months prior to the close of discovery, and should have disclosed these

---

[4] Overton was first identified in the defendants' initial disclosures in March 2003, well before the close of discovery. However, the plaintiffs believed that the reason he was disclosed by the defendants as someone with discoverable information under Rule 26(a)(1) was because he had information about the District Attorney's Office's investigation of the excessive charge allegations against the officers – not information about the potential charges that may have been brought against the deceased.

9

individuals earlier than October 22.

This situation was made more problematic by the fact that Franks and Cagle were disclosed as both lay and expert witnesses. Under Rule 26(b)(4), a party cannot depose the opposing party's expert until after the report is provided. Thus, the plaintiffs were precluded from deposing Franks and Cagle until they produced a report. As it turns out, neither Franks nor Cagle are expert witnesses and neither of them are required to provide a report. Nevertheless, by disclosing them as experts initially, the plaintiffs were effectively barred from deposing them.

With respect to Dr. Peters, the defendants first learned of him (according to the plaintiffs) during the deposition of plaintiff Melba Rich on May 18, 2004. Defendants eventually obtained medical records in discovery that included progress notes from Dr. Peters. Defendants contend that they could not have disclosed Dr. Peters as a witness earlier than January 22, and even if they could have, the untimely disclosure does not prejudice the plaintiffs because he was Rich's own treating physician, so the plaintiffs knew about him a long time ago. The court agrees with the defendants that the disclosure of Dr. Peters was not untimely, and even if it were, defendants have shown good cause for the late disclosure. Plaintiffs knew about Dr. Peters at least as early as May 18, and although the January 22 expert disclosure arguably prohibited the plaintiffs from deposing him after that date,

10

nothing prevented the plaintiffs from deposing him prior to the close of discovery.

Regarding Overton, the defendants subpoenaed him to testify at trial after the plaintiffs submitted an expert report calculating Rich's earning capacity without deducting any potential salary Rich would not have received if he were convicted and incarcerated for stabbing Amy Rich. Defendants first disclosed Overton to the plaintiffs in March 2003 as a person who may have knowledge pertaining to this case. As with Dr. Peters, the plaintiffs could have deposed Overton before the close of discovery. The fact that the defendants want to have him testify about possible charges and sentences, as opposed to the excessive force investigation of the officers, does not make the disclosure untimely. The court concludes that the plaintiffs had timely notice of Overton.

## C.  Appropriate Sanctions

Having found that the defendants' disclosures of Franks and Cagle were untimely, the court must now determine the appropriate sanction. Plaintiffs seek exclusion of testimony by these individuals. The sanction of exclusion, however, is considered drastic. Freeland v. Amigo, 103 F.3d 1271, 1280 (6th Cir. 1997); K.M.C. Co., Inc. v. Irving Trust Co., 757 F.2d 752, 765 (6th Cir. 1985). Exclusion of relevant evidence defeats "the truth-seeking function of trial." Bowling v. Vose, 3 F.3d 559, 562 (1st Cir. 1993). Thus, it should only be used when other lesser sanctions

11

are inadequate to remedy the offensive actions.

This court finds that exclusion of the testimony of these individuals would be too severe, but a lesser sanction is warranted. Therefore, the court shall permit the plaintiffs to depose Franks and Cagle prior to trial. Moreover, because the defendants could have and should have disclosed Franks and Cagle at an earlier time, the court will require the defendants to reimburse the plaintiffs for their attorney's fees and expenses associated with the filing of this motion and counsel's participation at the June 8 hearing.

### III. CONCLUSION

For the reasons above, the motion to exclude is DENIED. Plaintiffs may depose Frank and Cagle prior to trial. The defendants shall take all reasonable steps to make these witnesses available for deposition as soon as possible. Plaintiffs shall file an affidavit within seven (7) days from the date of this order, with a copy served on the defendants, setting forth the attorney's fees and expenses associated with filing this motion and counsel's participation at the June 8 hearing. If the defendants oppose any portion of those fees, they shall file their objections within seven (7) days after receipt of service of the affidavit.

IT IS SO ORDERED.

_____
TU M. PHAM
United States Magistrate Judge

June 20 2005
Date

13

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 160 in case 1:02-CV-01222 was distributed by fax, mail, or direct printing on June 21, 2005 to the parties listed.

---

Milton Dale Conder
RAINEY KIZER REVIERE & BELL
105 S. Highland Ave.
P.O. Box 1147
Jackson, TN 38302--114

James A. Hopper
HOPPER & PLUNK
P.O. Box 220
Savannah, TN 38372

Michael R. Hill
FLIPPIN COLLINS & HILL, PLLC
P.O. Box 679
Milan, TN 38358

Fred Collins
FLIPPIN COLLINS & HILL, PLLC
P.O. Box 679
Milan, TN 38358

Andrew C. Clarke
BAILEY & CLARKE
6256 Poplar Avenue
Memphis, TN 38119

John C. Duffy
WATSON & HOLLOW
P.O. Box 131
Knoxville, TN 37901--013

Honorable James Todd
US DISTRICT COURT