IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| DEMUS RICH and wife, MELBA RICH, individually and as Executors of the Estate of GARY BRIAN RICH, deceased, | ) ) ) ) ) |
| Plaintiffs, | ) ) No. 1:02-1222 T/P |
| vs. | ) ) |
| CITY OF SAVANNAH, TENNESSEE, et al., | ) ) ) |
| Defendants. | ) ) ) |

## ORDER GRANTING IN PART PLAINTIFFS' MOTION TO EXCLUDE THE TESTIMONY OF GARY VILKE, M.D.

Before the court is Plaintiffs Demus and Melba Rich's Motion to Exclude the Testimony of Gary Vilke, M.D., filed on May 19, 2005 (dkt #135). Defendants filed their response on June 2, 2005. The matter was referred to the Magistrate Judge for disposition.[1] On September 13, 2005, the court held a hearing on the motion.

---

[1] A Magistrate Judge's evidentiary determinations regarding expert testimony, even where they may ultimately affect the outcome of a claim or defense, are non-dispositive orders entered pursuant to 28 U.S.C. § 636(b)(1)(A). See Lithuanian Commerce Corp. Ltd. v. Sara Lee Hosiery, 179 F.R.D. 450, 456 (D.N.J. 1998) (citing Ferriso v. Conway Organization, 1995 WL 580197, at *1 (S.D.N.Y. Oct. 3, 1995)(unpublished)); Jesselson v. Outlet Assocs. of Williamsburg, Ltd., 784 F.Supp. 1223, 1227-28 (E.D. Va. 1991)).

This document entered on the docket sheet in compliance with Rule 58 and/or 79 (a) FRCP on 9/30/05

Counsel for all parties were present and heard.[2] For the reasons below, the motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

Plaintiffs Demus Rich and Melba Rich ("Plaintiffs"), as executors of the estate of their son Gary Brian Rich ("Rich"), filed this action pursuant to 42 U.S.C. § 1983, alleging that the City of Savannah, Tennessee, the Chief of Police of the Savannah Police Department ("SPD"), and seven SPD officers violated Rich's federal and state constitutional rights. Plaintiffs also assert a state law negligence claim.

This lawsuit arises from an altercation between Rich and SPD officers on August 24, 2001. On that date, SPD received an emergency telephone call in which the caller stated that a woman had been stabbed. Officers responding to the call found Amy Rich ("Amy") at her neighbor's home, where she was being treated by emergency medical service personnel for stab wounds. Amy informed the officers that she had been stabbed by her husband, Gary Rich. She indicated to the officers that she believed her husband was at their house.

SPD Officers Terry W. Hosea, T.J. Barker, Victor W. Cherry,

---

[2] At counsel's request, the court allowed defendants' counsel to participate via telephone at the hearing. Prior to the hearing, the parties participated on a telephone conference call with the undersigned at which time defendants' counsel stated that they did not intend to present any witnesses or other evidence at the September 13 hearing, and thus requested to participate at the hearing via telephone.

2

and John Sylvester went to the Rich home and found Rich sitting on his couch. Rich was holding a knife and did not respond to commands from the officers. The four officers then sprayed Rich with mace. The officers moved back outside the home and secured the perimeter. Along with Officers Tim Kelley, Larry Phelps, Allen Snelling, and a police canine, the four officers re-entered Rich's home and confronted him. Once again, Rich did not comply with the officers' demands, at which time they proceeded to restrain him. Plaintiffs allege that the officers first disabled Rich by spraying him with a fire hose, and then proceeded to beat, hit, kick, and force Rich into submission. Rich later died, and Plaintiffs claim that his death was a result of the officers' excessive force.

Plaintiffs argue that Defendant's expert witness, Dr. Gary Vilke, should be excluded from testifying at trial because he failed to "review and consider numerous important documents" in formulating his expert opinions, and thus his opinions do not meet the requirements of reliability set forth in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993), and Federal Rules of Evidence 702 and 703. In the alternative, Plaintiffs seek to prevent Dr. Vilke from testifying on the following specific topis: (1) that Rich's head injuries could have been caused by objects other than police batons; (2) about the pathologic findings of hypoxic brain injury and any causal link between CPR and hypoxic brain injury; (3) that Rich's petechial hemorrhages were caused by

CPR; and (4) that certain witnesses had poor vantage points.

## II.  ANALYSIS

Plaintiffs contend that Dr. Vilke failed to review and consider the following: (1) defendant Chief of Police Derr's deposition; (2) police reports filed by the defendant officers shortly after the incident; (3) officers Tim Kelly and Victor Cherry's TBI statements, police reports, and interrogatory responses; (4) TBI's final report concerning the death of Rich and the depositions of TBI officers; (5) depositions of several civilian witnesses to the incident including, among others, Jeremy Blount, Patrick Moore, and Amber Doucette; (6) statements and deposition of civilian witness Kimberly Gladys; (7) discovery responses of the defendants; and (8) photographs of the scene.

Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

This standard essentially involves three elements. First, the expert must demonstrate to the trial court that he or she is qualified - "by knowledge, skill, experience, training or education" - to proffer an opinion.  Second, by referring to

4

"scientific, technical, or other specialized knowledge," Rule 702 requires "evidentiary reliability" in the principles and methods underlying the expert's testimony. Third, the expert's testimony must assist the trier of fact in that the testimony must "fit" the facts of the case. See Pride v. BIC Corp., 218 F.3d 566, 577-78 (6th Cir. 2000); see also Daubert, 509 U.S. at 592-93 ("[T]he trial judge must determine at the outset . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.").

"The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted. The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded." Fed. R. Evid. 702 advisory committee's notes.

As stated by the Third Circuit, proponents "do not have to demonstrate . . . that the assessments of their experts are correct, they only have to demonstrate . . . that their opinions are reliable . . . . The evidentiary requirement of reliability is lower than the merits standard of correctness." In re Paoli R.R.

5

Yard PCB Litig., 35 F.3d 717, 744 (3d Cir. 1994); see also Ruiz-Troche v. Pepsi Cola, 161 F.3d 77, 85 (1st Cir. 1998)("Daubert neither requires nor empowers trial courts to determine which of several competing scientific theories has the best provenance."). Several factors that the trial court may consider in analyzing the reliability of an expert's methods are: whether a method is testable, whether it has been subjected to peer review, the rate of error associated with the methodology, and whether the method is generally accepted in the scientific community. See Pride, 218 F.3d at 577.

In addition, the rejection of expert testimony is the exception rather than the rule, and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." Fed. R. Evid. 702 advisory committee's notes (2000) (quoting United States v. 14.38 Acres of Land, 80 F.3d 1074, 1078 (5th Cir. 1996)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596.

The proponent of the evidence has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence. See Fed. R. Evid. 104(a); Bourjaily v. United States, 483 U.S. 171, 175-76 (1987). Defendants, therefore, must demonstrate that the expert testimony offered by

6

Dr. Vilke satisfies the reliability requirements of Fed. R. Evid. 702 and Daubert. Wynacht v. Beckman Instruments, Inc., 113 F.Supp.2d 1205, 1207 (E.D. Tenn. 2000).

**A.   Motion to Preclude Dr. Vilke From Testifying at Trial**

The defendants have designated Dr. Vilke, an emergency room physician and medical school professor, to testify that cerebral anoxia caused by cocaine intoxication with agitated delirium caused Rich's death. In addition, Dr. Vilke will opine that the autopsy examiner incorrectly listed traumatic asphyxia as a contributing factor to Rich's death. Plaintiffs seek to exclude Dr. Vilke's expert testimony because they contend "that his opinions are not 'based upon sufficient facts or data' required by Rule 702." (Plas.' Mem. in Support at 15). Plaintiffs argue that Dr. Vilke's opinion, in order to be considered reliable, must be based on a review of "all the relevant evidence," and that his purported failure to consider all such evidence renders his opinion unreliable.

Specifically, Plaintiffs contend that Dr. Vilke failed to review and consider the following: (1) defendant Chief of Police Derr's deposition; (2) police reports filed by the defendant officers shortly after the incident; (3) officers Tim Kelly and Victor Cherry's TBI statements, police reports, and interrogatory responses; (4) TBI's final report concerning the death of Rich and the depositions of TBI officers; (5) depositions of several

7

civilian witnesses to the incident, including among others Jeremy Blount, Patrick Moore, and Amber Doucette; (6) statements and deposition of civilian witness Kimberly Gladys; (7) discovery responses of the defendants; and (8) photographs of the scene.

Rule 702, however, does not require that an expert consider all relevant evidence. It only requires that the expert's testimony be based on sufficient facts and data to make the testimony reliable. See, e.g., Damon v. Sun Co., 87 F.3d 1467, 1475 (1st Cir. 1996)(finding that expert's testimony was based on sufficient facts even though there was no doubt that "more testing could have been done"). "When facts are in dispute, experts sometimes reach different conclusions based on competing versions of the facts. The emphasis in the amendment on 'sufficient facts or data' is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other." Fed. R. Evid. 702 advisory committee's notes (2000); see also Micro Chem., Inc. v. Lextron, Inc., 317 F.3d 1387, 1392 (Fed. Cir. 2003).

Dr. Vilke reviewed several medically related documents, including the autopsy report with a toxicology report, autopsy photographs, a patient run report from Hardin County EMS, Hardin County General Hospital records, the Regional Medical Center at Memphis records, and the Air Evacuation Life Team report. In addition, Dr. Vilke reviewed Plaintiffs' second amended complaint,

8

the defendant officers' answer, the statements and depositions of fifteen witnesses, a diagram of the Rich house, and the report of plaintiffs' expert Dr. John T. Cooper.

Having reviewed Dr. Vilke's report and his deposition transcript, the court finds that Dr. Vilke based his expert opinion regarding the cause of Rich's death on sufficient facts and data, and therefore his opinion meets the reliability requirement. To the extent that Plaintiffs have information that Dr. Vilke did not consider in formulating his opinion, such information may be used to challenge his testimony at trial. Plaintiff's motion to exclude Dr. Vilke from testifying at trial is DENIED.

### B. Motion to Preclude Dr. Vilke From Testifying On the Cause of Rich's Head Injuries

Plaintiffs claim that Dr. Vilke does not have a factual foundation to support his opinion that Rich's injuries were either self-inflicted prior to the incident in question, or were caused by "lifting up and striking the underside of a cabinet when resisting officers," being sprayed with a fire hose, or striking the floor. At his deposition, Dr. Vilke admitted that there is no evidence in the documents provided to him that indicates Rich's head injuries were caused prior to the officers' arrival, or were otherwise caused by Rich hitting his head against the floor, fire hose, or cabinets. (Dr. Vilke's Dep. at 83-86, 95-96). Dr. Vilke, however, does not state an opinion as to the cause of Rich's head injuries. He merely states that these scenarios could explain the autopsy

9

findings of blunt force trauma. Dr. Vilke states that he was "unable to determine specifically the mechanism from which each of the individual lacerations and bruises were acquired." (Dr. Vilke's Report at 3). Thus, Dr. Vilke readily admits he cannot determine the exact cause of Rich's head injuries and will not be able to provide his opinion as to the specific cause of those injuries at trial.

At this time, however, it is premature to prohibit Dr. Vilke from testifying about alternative causes of Rich's head injuries. Defendants may provide evidence at trial that Rich's head injuries were caused by contact with something other than police batons, and if so, there may be a sufficient factual basis for Dr. Vilke's opinion. Accordingly, Plaintiff's motion to preclude Dr. Vilke from testifying about alternative sources of Rich's head injuries is DENIED.

C. **Motion to Preclude Dr. Vilke From Testifying About the Pathological Findings of Brain Injury**

Plaintiffs maintain that Dr. Vilke should be precluded from testifying about the pathological findings of hypoxic brain injury because he did not include any information on hypoxic brain injury in his expert report. At his deposition, Dr. Vilke stated that he is not going to give an opinion on the pathologic findings of hypoxic brain injury. Based on this statement, the motion is GRANTED with respect to this specific topic.

Moreover, Dr. Vilke testified at his deposition that there is

no mention of hypoxic brain injury in his report. Rule 26 requires an expert report to "contain a complete statement of all opinions to be expressed and the basis and reasons therefor . . . ." Fed. R. Civ. P. 26(a)(2). This rule allows the opposing party to adequately prepare for cross-examination and, if necessary, to retain a rebuttal expert. Fed. R. Civ. P. 26 advisory committee's note (1993). Since the defendants failed to disclose any such opinion in Dr. Vilke's report, on this independent basis, Plaintiffs' motion regarding Dr. Vilke's opinion regarding pathologic findings of hypoxic brain injury is GRANTED.

In related testimony at his deposition, however, Dr. Vilke indicated that he could testify "about how CPR can cause hypoxic brain injury." (Dr. Vilke Dep. at 34). In his Rule 26 report, Dr. Vilke expressed no such opinion or basis for that opinion. If a party's expert provides deposition testimony that exceeds the scope of its Rule 26 report, the party has a duty to supplement its disclosures by the time the party's disclosures are due under the scheduling order entered in the case. Fed. R. Civ. P. 26(e)(1). Here, under the July 19, 2004 amended scheduling order, any supplementation under Rule 26(e) was to be completed by January 15, 2005.[3] Defendants have not submitted a Rule 26(e) supplemental

---

[3]The court recognizes that although the deadline for supplemental disclosures was January 15, the deposition of Dr. Vilke did not occur until April 26. Nonetheless, Defendants were certainly on notice of their failure to comply with Rule 26 by April 2005, as Dr. Vilke was specifically questioned at his

11

report that includes Dr. Vilke's opinion, and its basis, that CPR can cause hypoxic brain injury.

Federal Rule of Civil Procedure 37(c)(1) provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial . . . any . . . information not so disclosed." Defendants have not made any assertion that their failure to provide a supplemental report as required by Fed. R. Civ. P. 26(e)(1) and the amended scheduling order is substantially justified. Further, the court concludes that the Defendants' failure to comply with the Federal Rules resulted in harm to the Plaintiffs. As a result of Defendant's incomplete disclosure, Plaintiffs were unable to prepare for an effective cross-examination on this issue at Dr. Vilke's deposition, and Plaintiffs would suffer harm if they now have to hire a rebuttal witness. Consequently, Plaintiff's motion to preclude Dr. Vilke from testifying about the pathological findings of brain injury and any causal connection between CPR and hypoxic brain injury is GRANTED.

**D.   Motion to Preclude Dr. Vilke From Testifying That Petechial Hemorrhages Occurred as a Result of CPR**

Plaintiffs also assert that Dr. Vilke should be precluded from

---

deposition about his failure to include in his Rule 26 report his opinion that CPR may lead to hypoxic brain injury. Thus, Defendants have had ample opportunity to provide a supplemental report and have failed to do so.

12

opining that Rich's petechial hemorrhages occurred as a result of CPR. They argue that Dr. Vilke provides no support for his belief that the CPR was the "most likely etiology" of the petechiae. An expert may rely on his own experience to serve as a basis for his opinion, but he must explain "how that experience leads to the conclusion reached, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory committee's notes (2000); <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 951 F.2d 1128, 1129 (9th Cir. 1991) ("We've been presented with only the experts' qualifications, their conclusions and their assurances of reliability. Under <u>Daubert</u>, that's not enough.").

In his report, Dr. Vilke states that petechiae are associated with several non-violent causes, including CPR, childbirth, and vomiting. At his deposition, Dr. Vilke testified that petechial hemorrhages are also an indicator of asphyxial deaths. (Dr. Vilke's Dep. at 119). Nonetheless, Dr. Vilke concluded that the petechial hemorrhages found on Rich's body were caused by the CPR applied to him rather than by the alleged asphyxiation. (Dr. Vilke's Dep. at 120).

At his deposition, Dr. Vilke stated that there was nothing particular about the CPR performed on Rich that led him to the conclusion that the petechiae resulted from the CPR. (Dr. Vilke's Dep. at 120). In addition, Dr. Vilke stated that he did not think that anyone had studied the likelihood that CPR recipients would

13

have petechiae, but he had "certainly seen" petechial hemorrhages in patients after they had received CPR. (Dr. Vilke's Dep. at 121). To the extent that Dr. Vilke's opinion is based on his experience in treating patients who have been given CPR, however, Dr. Vilke admitted that in his practice he did not "get that many CPRs." (Dr. Vilke's Dep. at 121).

The court concludes that the defendants have not met their burden of demonstrating how Dr. Vilke's experience led to his conclusion, and how that experience is reliably applied to these facts. Dr. Vilke has acknowledged that petechial hemorrhages are consistent with both asphyxiation and CPR, but has failed to provide any basis for his opinion that Rich's hemorrhages were caused by CPR rather than asphyxiation. At the September 13 hearing, Defendants were unable to provide the court with any research, literature, or anything else that would support Dr. Vilke's opinion that the hemorrhages were caused by CPR. Finally, Dr. Vilke's experience in treating patients that have received CPR is admittedly limited and is insufficient in this case to provide a sufficient assurance of reliability. Accordingly, the court GRANTS Plaintiff's motion to preclude Dr. Vilke from testifying that Rich's petechial hemorrhages were caused by CPR.

E.  **Motion to Preclude Dr. Vilke From Testifying That Certain Witnesses Had Poor Vantage Points**

The final topic that Plaintiffs contend Dr. Vilke has no factual support for is his statement that certain witnesses had

14

poor vantage points. At the September 13 hearing, Defendants conceded that Dr. Vilke's testimony concerning the vantage points of certain witnesses was beyond the scope of his expertise and that Dr. Vilke had an insufficient basis upon which to draw that conclusion. Thus, the court GRANTS Plaintiff's motion to preclude Dr. Vilke from opining on the vantage points of witnesses.

### III.  CONCLUSION

For the reasons above, the motion to exclude Dr. Vilke's testimony in its entirety is DENIED. The motion to exclude Dr. Vilke's testimony concerning the pathological findings of brain injury, the link between CPR and hypoxic brain injury, that CPR caused Rich's petechial hemorrhages, and the vantage points of witnesses is GRANTED. The motion to exclude Dr. Vilke's testimony on the cause of Rich's head injuries is DENIED.

IT IS SO ORDERED.

_____
TU M. PHAM
United States Magistrate Judge

September 27, 2005
Date

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 176 in case 1:02-CV-01222 was distributed by fax, mail, or direct printing on September 30, 2005 to the parties listed.

---

Andrew C. Clarke
BAILEY & CLARKE
6256 Poplar Avenue
Memphis, TN 38119

John C. Duffy
LAW OFFICE OF JOHN C. DUFFY
5410 Homberg Dr., Ste. 5
P.O. Box 11007
Knoxville, TN 37939

James A. Hopper
HOPPER & PLUNK
P.O. Box 220
Savannah, TN 38372

Michael R. Hill
FLIPPIN COLLINS & HILL, PLLC
P.O. Box 679
Milan, TN 38358

Milton Dale Conder
RAINEY KIZER REVIERE & BELL
105 S. Highland Ave.
P.O. Box 1147
Jackson, TN 38302--114

Fred Collins
FLIPPIN COLLINS & HILL, PLLC
P.O. Box 679
Milan, TN 38358

Robert H. Watson
WATSON & HOLLOW , P.L.C.
1500 Riverway Tower
900 South Gay Street
Knoxville, TN 37901--013

Honorable James Todd
US DISTRICT COURT